IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

SHELTER MUTUAL INSURANCE )
COMPANY, )
)
               Plaintiff, )
)
vs. ) Case No. CIV-13-1019-C
)
JAMES SWIGART, et. al., )
)
               Defendants. )

MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's Sealed Motion for Summary Judgment (Dkt. No. 61). Responses were due on December 22, 2014. Defendants Steve and Amber Meiwes ("the Meiweses") and their minor daughters M.M. and B.M. filed a timely Response (Dkt. No. 62). Defendants James and Mia Swigart ("the Swigarts") and their minor sons J.La.S and J.Le.S have not responded. Plaintiff filed a Reply (Dkt. No. 68). The motion is now at issue.

I. BACKGROUND

Plaintiff was the provider of the Swigarts' homeowners' insurance policies from February 15, 2010, to February 15, 2012. During this time, minor Defendants M.M. and B.M. attended Mia Swigart's unlicensed day care business at the Swigarts' home. On February 4, 2013, the Meiweses, as parents and next friends of M.M. and B.M., filed two causes of action in the Oklahoma State District Court of Canadian County against the Swigarts and their minor sons. (Pl.'s Br., Dkt. No. 61, Exs. 6 & 7.) The Meiweses allege

that J.La.S and J.Le.S committed sexual acts upon M.M. and B.M. from 2009 to early 2012. The Meiweses assert the following claims: negligence and intentional infliction of emotional distress against the Swigarts and their minor sons; premises liability and negligent supervision of M.M., B.M., J.La.S, and J.Le.S against the Swigarts; and false imprisonment and sexual assault and battery against J.La.S and J.Le.S. (See id.) On September 20, 2013, Plaintiff filed the present action for declaratory judgment and seeks a declaration that Plaintiff has no duty to defend[1] and/or indemnify the Swigarts against the Meiweses' claims. (Complaint, Dkt. 1, at 3).

## II. STANDARD OF REVIEW

Summary judgment is properly granted if the movant shows that no genuine dispute as to any material fact exists and that the movant "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of demonstrating the basis for its motion and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted). A fact is material if it affects the disposition of the substantive claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 247, 248 (1986). "Where the record taken as a whole could not lead a rational trier of fact

---

[1] In the summary judgment briefs, neither party addresses or produces evidence relevant to whether Plaintiff has a duty to defend the Swigarts and their minor sons in the pending cause of action in Oklahoma State District Court of Canadian County; and therefore the Court concludes the disposition as to coverage under the policy also resolves any duty to defend.

2

to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).  When considering a motion for summary judgment, a court must "'view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party.'"  Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1225 (10th Cir. 2000) (quoting Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999), abrogated on other grounds by Eisenhour v. Weber Cnty., 739 F.3d 496 (10th Cir. 2013)).

## III.  ANALYSIS

Plaintiff asks the Court to interpret the insurance policies and find that the terms of the policies exclude coverage for the claims asserted against the Swigarts and their minor sons.  Because jurisdiction in the present case is based on diversity, the Court applies the law of the forum state.  Houston Gen. Ins. Co. v. Am. Fence Co., Inc., 115 F.3d 805, 806 (10th Cir. 1997) ("The interpretation of an insurance contract is governed by state law and, sitting in diversity, we look to the law of the forum state.").  Under Oklahoma law, "[i]nsurance policies are contracts interpreted as a matter of law."  BP Am., Inc. v. State Auto Prop. & Cas. Ins. Co., 2005 OK 65, ¶ 6, 148 P.3d 832, 835 (footnote omitted).  The parties may contract for coverage of risks as they see fit and are then bound by the terms of the contract they set.  Wiley v. Travelers Ins. Co., 1974 OK 147, ¶ 16, 534 P.2d 1293,

1295.  "The construction of an insurance policy should be a natural and reasonable one, fairly constructed to effectuate its purpose, and viewed in the light of common sense so as not to bring about an absurd result."  Id.  The terms of an insurance contract, "if unambiguous, clear, and consistent, are accepted in their plain and ordinary sense, and the contract will be enforced to carry out the intention of the parties as it existed at the time the contract was negotiated."  Dodson v. St. Paul Ins. Co., 1991 OK 24, ¶ 12, 812 P.2d 372, 376 (citing 15 Okla. Stat. § 160).  Oklahoma law prohibits courts from "impos[ing] coverage where the policy language clearly does not intend that a particular individual or risk should be covered."  BP Am., Inc., 2005 OK 65, ¶ 6, 148 P.3d at 835.

Plaintiff provided two homeowners' insurance policies to the Swigarts.  The first, effective February 15, 2010, to February 15, 2011, excluded coverage of personal liability and medical payments to others for "bodily injury or property damage arising out of business pursuits of an insured." (Pl.'s Br., Dkt. No. 61, Ex. 9, at 2.)  This exclusion does not apply "to activities of the insured ordinarily incident to nonbusiness pursuits."  (Id.)  The second policy was effective from February 15, 2011, to February 15, 2012.  That policy excludes personal liability and medical payments coverage for "[b]odily injury or property damage arising out of the business of any insured . . . [and] [b]odily injury to any individual who is on the insured premises because of the business of any insured." (Pl.'s Br., Dkt. No. 61, Ex. 10, at 4-6.)

4

The evidence shows that Mia Swigart was operating an unlicensed day care and was paid $65 per week per child. (Pl.'s Br., Dkt. No. 61, Ex. 13, at 3.) According to the Oklahoma Department of Human Services, "there were at least 12 children in care at various times." (Pl.'s Br., Dkt. No. 61, Ex. 3.) Thus, the day care clearly was a business. See Am. Commerce Ins. Co. v. Few, No. 10-CV-0036-CVE-FHM, 2010 WL 2595860, at *5 (N.D. Okla. June 24, 2010) (holding that "charging money for regularly caring for another's children involves a profit motive" and therefore was a business); see also Wiley, 1974 OK 147, ¶¶ 10-13, 534 P.2d at 1295 (holding the part-time activity of breeding and selling St. Bernard puppies was a business because there was profit motive). The Meiweses do not dispute that M.M. and B.M. were at the Swigarts' home solely because of Mia Swigart's day care business when the alleged acts of sexual abuse occurred. Nor do the Meiweses dispute that "any insured" includes Mia Swigart. All of the Meiweses' state court claims are based on injuries resulting from the alleged sexual abuse M.M. and B.M. experienced while attending the day care. The terms of the second policy are clear: the policy does not cover claims of bodily injury to individuals who are "on the insured premises because of the business of any insured." Accepted in its plain and ordinary sense, the second policy excludes coverage for all of the Meiweses' state court claims.

Unlike the second policy, the first policy does not exclude coverage for persons located on the insured premises because of the business. The Court must determine whether the phrase "arising out of the business" encompasses all of the Meiweses' state

court claims. Oklahoma law construes "arising out of" as "broad, general and comprehensive." Ply v. Nat'l Union Fire Ins. Co. of Pittsburgh, Penn., 2003 OK 97, ¶ 21, 81 P.3d 643, 649. The Tenth Circuit has held that a broad reading of "arising out of"—"such as 'originating from' or 'growing out of' or 'flowing from' or 'done in connection with'"—is consistent with Oklahoma law. Fed. Ins. Co. v. Tri-State Ins. Co., 157 F.3d 800, 804 (10th Cir. 1998). The phrase "requires some causal connection to the injuries suffered, but does not require proximate cause in the legal sense." Id. Neither the Oklahoma courts nor the Tenth Circuit has addressed the scope of "arising out of the business" in a factual scenario similar to the instant case.

Defendants do not dispute that the claims based on the Swigarts' negligent supervision of M.M. and B.M. are excluded under the policy, and the law supports this determination. See Am. Commerce Ins. Co., No. 10-CV-0036-CVE-FHM, 2010 WL 2595860, at *6 (holding that claims of negligence and assault and battery against the day care provider were excluded under the insurance policy because the injured child was at the residence because of the day care business, the defendant was caring for the child as a day care provider, and the claims resulted from activities related to the business); see also Wiley, 1974 OK 147, 534 P.2d 1293; Maryland Cas. Co. v. Farmers Alliance Mut. Ins. Co., 1977 OK CIV APP 22, 566 P.2d 168. Defendants argue that not all the Meiweses' state court claims arose out of the day care business because James Swigart and the minor sons were not involved in the operation of the business. Defendants' argument is not

persuasive. The terms of the insurance contract are clear. The insurance policy does not cover bodily injuries "arising out of business pursuits of an insured." (Pl.'s Br., Dkt. No. 61, Ex. 9.) "The object to be accomplished by the homeowner's policy was to insure a home and not a business." Wiley, 1974 OK 147, ¶ 14, 534 P.2d at 1295. The policy must be "fairly construed to effectuate [that] purpose." Wiley, 1974 OK 147, ¶ 16, 534 P.2d at 1295. Mia Swigart is an insured. M.M. and B.M. were on the Swigarts' premises solely for the purpose of attending the day care business. The injuries occurred while B.M. and M.M. were under the care of Mia Swigart pursuant to the business. Thus, the injuries "arise out of" or "originate from" the business. Any liability James Swigart and his minor sons have is based on the bodily injury arising out the business and, consequently, is excluded under the insurance policy. See Phillips v. Estate of Greenfield, 1993 OK 110, ¶ 16-20, 859 P.2d 1101, 1105-6 ("'Coverage does not turn on the legal theory under which liability is asserted, but on the cause of the injury.'") (citation omitted).

Furthermore, the false imprisonment and sexual assault and battery claims against J.La.S and J.Le.S also are excluded under the first policy, which denies coverage for "bodily injury or property damage expected or intended by an insured."[2] (Pl.'s Br., Dkt. No. 61, Ex. 9.) Plaintiff argues that J.La.S and J.Le.S expected and intended the physical, mental, and emotional injuries that M.M. and B.M. suffered as a result of the sexual abuse.[3]

---

[2] Neither party disputes that J.La.S and J.Le.S are insured under the policy.

[3] The Swigarts, J.La.S, and J.Le.S dispute that the alleged acts of sexual abuse occurred. The Court's duty is to determine whether the insurance policies would cover civil liability for the

7

Plaintiff asserts the intent to harm is inferred as a matter of law. J.La.S and J.Le.S were charged with violating 21 Okla. Stat. § 1123 and 21 Okla. Stat. § 888. J.Le.S also was charged with violating 21 Okla. Stat. § 1114.[4] These crimes require intent. Defendants argue that the law does not infer intent to harm because J.La.S and J.Le.S were minors. When these acts occurred, J.La.S was approximately 14-16 years old and J.Le.S was approximately 11-14 years old. Oklahoma law states that children older than 7 but younger than 14 are not capable of committing a crime "in the absence of proof that at the time of committing the act or neglect charged against them, they knew its wrongfulness." 21 Okla. Stat. § 152. J.La.S and J.Le.S both admitted that they knew the sexual acts would harm M.M. and B.M. (See Pl.'s Br., Dkt. No. 61, Ex. 14, at 5-10; see also Pl.'s Br., Dkt. No. 61, Ex. 15, at 2-5.) Thus, J.La.S and J.Le.S expected and intended the injuries that occurred. The false imprisonment and sexual assault and battery claims are based on those injuries and are excluded under the insurance contact.

Pursuant to the plain and ordinary terms of the contracts, the insurance policies Plaintiff provided to the Swigarts from February 15, 2010, to February 15, 2012, exclude coverage for all of the Meiweses' state court claims. Because a rational trier of fact could not find for the Defendants, summary judgment is appropriate.

---

alleged acts, not whether the alleged acts occurred. For purpose of this determination, the Court will assume *arguendo* that the alleged acts did occur.

[4] There is some evidence that both J.La.S and J.Le.S pled nolo contendere. (See Pl.'s Br., Dkt. No. 61, Ex. 14, at 6; see also Pl.'s Br., Dkt. No. 61, Ex. 13, at 12.)

## CONCLUSION

Accordingly, Plaintiff's Motion for Summary Judgment (Dkt. No. 61) is GRANTED. All remaining pending motions are moot. The Court shall issue a separate judgment.

IT IS SO ORDERED this 28th day of January, 2015.

ROBIN J. CAUTHRON
United States District Judge